UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-22622-CV-COOKE
MAGISTRATE JUDGE REID

KENNY DAVIS,

      Petitioner,

v.

STATE OF FLORIDA,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

Petitioner, **Kenny Davis**, has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, attacking his convictions and sentences entered in Miami-Dade County Circuit Court, Case No. F08023851. [ECF No. 1]. This Cause has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c) and S.D. Fla. Admin. Order 2019-02. [ECF No. 24].

For its consideration of the Petition [ECF No. 1] and the Supplemental Petition [ECF No. 26], the Court has received the state's Responses to this Court's Orders to Show Cause [ECF No. 19, 35], along with supporting documents [ECF Nos. 20].

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises the following grounds:

**Claims 1, 6, & 7**: The state trial court allegedly denied Petitioner's right to a fair trial by precluding him from impeaching the sole eyewitness to the shooting. [ECF No. 1 at 5-7, 13-17].

**Claim 2**: The state trial court allegedly denied his right to a fair trial when it denied

Petitioner's self-defense jury instruction. [ECF No. 1 at 7-8].

**Claim 3**: Defense counsel was allegedly ineffective in failing to object to the prosecutor's improper comments during closing regarding Petitioner's post-arrest silence. [ECF No. 1 at 8-10].

**Claim 4**: Defense counsel was allegedly ineffective in failing to object to the prosecutor's improper and inflammatory comments during closing argument. [ECF No. 1 at 10-11].

**Claim 5**: Defense counsel was allegedly ineffective in failing to advise Petitioner that the court would not give a self-defense jury instruction unless Petitioner testified. [ECF No. 1 at 11-13].

**Claim 8**: Appellate counsel was allegedly ineffective for failing to challenge the trial court's ruling limiting important testimony. [ECF No. 26 at 4].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that the Petition be denied because Petitioner is not entitled to relief on the merits.

## II.  Factual and Procedural History

**Charges**

On February 15, 2012, the state charged Petitioner by indictment with first degree murder with a firearm, in violation of Fla. Stat. §§ 782.04(1) and 775.087. [ECF No. 19-2 at 1-2].

**Trial**

The following evidence was introduced at trial. Leonard "Duke" Coward ("the victim") regularly sold drugs to people who lived in his apartment building as well as his neighborhood. [ECF No. 20, Trial Transcripts, T. 804, 929-30]. During the two months leading up to the shooting, the victim had a special arrangement with his next-door neighbor, Bibi "Pookie" Wahab, where she had sex with him in exchange for narcotics. [T. 637-38].

A week before his death, the victim terminated his relationship with Wahab and cut off her drug supply. [T. 638-41]. Wahab became vengeful and began bringing various men, including Petitioner, to the victim's door in an effort to intimidate him. [T. 636-40, 911]. For three days

straight, Petitioner set up shop in the victim's usual place of business in front of the apartment building. [T. 640-41, 651].

Petitioner and the victim brandished guns at each other. [T. 912-15, 917]. The victim held a .38 caliber revolver and Petitioner held a .9 millimeter. [T. 913]. When Petitioner asked whether the victim held a "five shooter," the victim responded, "don't worry about it, I'm going to protect myself." [T. 917]. A witness to this incident, Arteus Thompson, thought "somebody was going to get killed at that time." [T. 917]. Several days later, Elizabeth Kaifos observed Petitioner sitting on top of his car, which he had parked in the victim's usual spot. [T. 643-44]. As the victim drove past, Petitioner waved his gun at him. [*Id.*].

Around 8:00 p.m. on the night before the shooting, Kaifos observed another encounter involving Petitioner and the victim. [T. 645]. Petitioner and Wahab were walking towards the building when the victim crossed their path. [T. 646]. Wahab said something to Petitioner who then exclaimed, "that's that n**ger right there you were telling me about." [T. 650].

Jorge Conde lived in the apartment building and regularly bought drugs from the victim, sometimes on credit. [T. 804-05, 866, 933-34]. A few hours before the shooting, Conde went to the victim's apartment to hang out. [T. 806-09, 941]. The victim was smoking marijuana and appeared to be under the influence. [T. 818, 845-46]. After the two went outside, the victim gave Conde the keys to his apartment and asked Conde to retrieve a .38 revolver resting on top of the television. [T. 809]. Conde complied, without asking any questions, and the victim put the weapon in his pocket. [T. 810, 854]. The weapon was never recovered by the police. [T. 702].

Around 2:30 a.m., Conde and the victim saw Petitioner walking towards them from across the street. [T. 815]. Petitioner stopped at a nearby parking lot. [T. 818-19]. The victim and Conde approached Petitioner, who was waiting with his hands behind his back. [T. 820]. The victim

started to pull an object out of his pocket. [T. 820-21]. Petitioner asked, "how's that" and the victim tried to respond, "it's not good, but anyway, I'm going to pay you." [T. 821-22]. However, before the victim, could finish his sentence, Petitioner opened fire. [T. 822-23]. Conde was not sure whether the victim still had the .38 in his pocket, however, from Conde's point of view, the victim appeared to be retrieving cash from his pocket. [T. 820-22].

The victim fell to the ground and Petitioner continued shooting. [T. 823-24, 828, 847-48]. Conde ran to his apartment as he continued to hear shots. [T. 824-25]. Thirty minutes later, Conde returned to the victim to find him mortally wounded. [T. 694, 827, 937]. Arteus Thompson was already there and had called the police. [T. 855, 909-10, 926, 937]. Thompson did not see Petitioner shoot the victim but came running because he heard shots. [T. 935]. When the police arrived, Conde identified Petitioner as the shooter. [T. 829-30, 855].

Investigators recovered two types of shell casings which indicated two different weapons were fired. [T. 892-93, 898]. Police concluded 12 of the 21 casings were expelled from a .9 millimeter firearm but could not identified the other weapon.  [*Id.*]. The victim's body had 16 separate gunshot entry wounds caused by two different firearms. [T. 562, 787]. When officers arrested Petitioner, he first denied any knowledge of the victim's death. [T. 970-76]. Later, he conceded he was present that night but did not observe the shooting. [*Id.*].

### Judgment/Sentence

The jury found Petitioner found guilty as charged. [ECF No. 19-2 at 3-8]. The state trial court sentenced Petitioner to life in prison. [ECF No. 19-2 at 9-13].

### Direct Appeal

Petitioner appealed in Florida's Third District Court of Appeal ("Third DCA"). [ECF No. 19-2 at 30-62]. Petitioner alleged that the trial court erred by precluding him from impeaching the

sole eyewitness to the shooting and by denying his request to instruct the jury on self-defense. [ECF No. 19-2 at 31-32]. Petitioner raises similar arguments under Claims 1, 2, 6, and 7 in the instant proceedings. [ECF No. 1 at 5-8, 13-17].

On July 23, 2014, the Third DCA *per curiam* affirmed his convictions and sentences without written opinion in *Davis v. State*, 150 So. 3d 1152 (Fla. 3d DCA 2014). Mandate issued September 11, 2014. [ECF No. 19-2 at 103].

**Rule 3.850 Postconviction Motion**

On September 16, 2014, Petitioner filed a *pro se* motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. [ECF No. 19-2 at 105-142]. Petitioner raised the following: (1) Defense counsel was ineffective in failing to advise Petitioner that the court would not give a self-defense jury instruction unless Petitioner testified; (2) Defense counsel was ineffective in failing to object to the prosecutor's improper comments on Petitioner's post-arrest silence; and (3) Defense counsel was ineffective in failing to object to the prosecutor's improper and inflammatory comments during closing argument. [*Id.*]. Petitioner raises these same claims in the instant proceedings under Claims 2, 4, and 5. [ECF No. 1 at 7-8, 10-13]. The state filed a response in opposition to the motion. [ECF No. 19-2 at 143-45]. The trial court issued an order finding that an evidentiary hearing was required for the first claim and denying claims 2 and 3. [ECF No. 19-2 at 147-48].

Following the evidentiary hearing, the trial court issued an order denying claim 1, having found defense counsel's testimony credible that she had explained to Petitioner that he needed to take the stand in order to argue self-defense and he declined. [ECF No. 19-3 at 113-16].

Petitioner appealed. [ECF No. 19-3 at 118]. On December 20, 2017, the Third DCA *per curiam* affirmed without written opinion in *Davis v. State*, 239 So. 3d 681 (Fla. 3d DCA 2017). Petitioner filed a motion for rehearing and clarification, which the Third DCA denied on February

28, 2018. [ECF No. 19-4 at 3]. Mandate issued January 12, 2018. [*Id.*].

### Petition for Writ of Habeas Corpus in the Third DCA

Petitioner filed a petition for writ of habeas corpus in the Third DCA in which he alleged that appellate counsel was ineffective. [ECF No. 19-4 at 5-13]. Petitioner raises the same claim in his supplemental motion in this court as Claim 8. [ECF No. 26 at 4]. The Third DCA denied the petition on January 28, 2016 in *Davis v. State*, 208 So. 3d 90 (Fla. 3d DCA 2016).

### 28 U.S.C. § 2254 Petition

Petitioner filed his § 2254 petition on June 12, 2018. [ECF No. 1 at 20]. The state filed a Response with supporting exhibits. [ECF Nos. 19, 20]. Petitioner filed a Supplemental Petition, in which he raises an eighth claim. [ECF No. 26]. The state filed a Supplemental Response. [ECF No. 35]. The state concedes that the original Petition and Supplemental Petition are timely. [ECF No. 35 at 10].

### III. Exhaustion

The state argues that some of the claims are unexhausted and procedurally defaulted from federal habeas review for a variety of reasons. [ECF No. 19 at 10]. However, the state addresses the merits of each claim.

Pursuant to 28 U.S.C. § 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing 28 U.S.C. § 2254(b)-(c)). When it is unclear or less efficient to resolve whether the additional restriction in § 2254(d) applies, federal courts may also deny writs of habeas corpus under § 2254 by engaging in *de novo* review, a more favorable standard, as a habeas petitioner

would surely not be entitled to a writ under § 2254(d) if the claim would fail under *de novo* review. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *see also Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012). Pursuant to 28 U.S.C. § 2254(b)(2), the Court has authority to address unexhausted claims when a denial is appropriate on the merits. *See Berghuis*, 560 U.S. at 390. For efficiency, the merits of the allegedly unexhausted claims will be addressed in this Report.

### IV. Governing Legal Principles

This Court's review of a state prisoner's federal petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

A federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011*); see also Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits" in the state forum, § 2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved **an unreasonable application of**, clearly established Federal law,[1] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Harrington*, 562 U.S. at 97-98; *Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *See Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

Because "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *See Harrington*, 562 U.S. at 102.

Petitioner alleges **ineffective assistance of counsel**. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

---

[1] "Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *See White v. Woodall*, 572 U.S. 415, 419 (2014); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his or her counsel's **performance was deficient**, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered **prejudice** as a result of that deficiency. *See id.* at 687-88.

To establish **deficient performance**, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland, supra*; *see also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Regarding the **prejudice** component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *See Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *See Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

Petitioner also alleges **ineffective assistance of appellate counsel**. To establish ineffective assistance of appellate counsel, a petitioner must show "(1) appellate counsel's performance was

deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal."

*Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*,

528 U.S. 259, 285-86 (2000); *Strickland*, 466 U.S. 668).

## V. Discussion

Under **Claims 1, 6,** and **7**, Petitioner asserts that the state trial court denied his right to a

fair trial by precluding him from impeaching the sole eyewitness to the shooting. [ECF No. 1 at 5-

7, 13-17]. Specifically, Petitioner argues that he was prevented from establishing, through cross-

examination, that Jorge Conde contacted the lead detective, Detective Segovia, for help on a

separate criminal case pending against Conde. [*Id.*]. Petitioner argues that this line of cross-

examination would have indicated that the witness was biased and had a motive to lie. [*Id.*]. He

also argues that he was prevented from impeaching Conde with his deposition in connection with

his four prior felony convictions. [*Id.*].

The following took place in connection with the defense's cross-examination of Conde:

**Defense counsel**: You testified before lunch, sir, about your arrests or conviction?

**Conde**: Yes.

**Defense counsel**: And they have been over the course of a few years, correct?

**Prosecutor**: Judge, I'm going to object, its improper impeachment.

**The Court**: Sustained. . . .

**Defense counsel**: I want to specifically get into, since the shooting in 2008 up until now. He has called Detective Segovia and asked specifically for some sort of help on the arrest that he had on cases. I think it goes to bias.

**Prosecutor**: Arrest of what?

**Defense counsel**: His arrest in the subsequent years since the shooting in 2008. He has called Detective Segovia and he has requested help whenever that may be on his cases, but I think it goes to the bias of the witness and the jury should be entitled to hear it. It's in the jury instructions we received any reference to the treatment, whether he's biased, and so I

want to get into that line of questioning.

[T. 859-61]. The prosecutor explained that the state was unaware of these facts. [T. 860-61]. Defense counsel explained that she learned of them during Detective Segovia's deposition, however, she did not have a transcript of the deposition. [T. 862]. The court gave the state time to speak with the detective. [*Id.*]. The state then proffered:

> **Prosecutor**: Here's what I did, Your Honor, I went out and spoke with Detective Segovia and I asked him, have you ever talked to [Conde] about anything having to do with some pending case or something like that, and he goes, his recollection was vague, he's out there telling me what it was, if you want to talk to him, but basically he said, you know, he called something about a bench warrant, or maybe something about a petty theft, that's what he said to me, and he didn't remember the words just something about can I help him, something like that, and I told him, no, [Conde], I don't think there's anything I can do. The reason I don't think that is admissible is if you look at the weighing the evidence, has the witness offered or received any money, preferred treatment or other benefit in order to get him to—
>
> **The Court**: Offered or received.
>
> **Prosecutor**: Yes.
>
> **The Court**: Not, did the witness offer.
>
> **Prosecutor**: Yes. And, you know, and it was either offered or received. There are times that the guy said, you know, who is testifying, says, I haven't had the state promise me anything, but I hope to be able to receive it. We are way past talking to Segovia about it. He asked and Segovia said no.
>
> **Defense counsel**: The fact that the witness would even call a detective to request help on it goes to the bias of the witness and goes to the credibility of the witness and goes to one of those things that the jury can weigh the credibility of the witness. It's not whether he, in fact, received preferential treatment, it's whether he was asking for it and indeed he was.

[T. 863-64]. The court sustained the state's objection, concluding that the evidence established that law enforcement did not give or offer Conde preferential treatment. [T. 864-65].

Pursuant to Fla. Stat. § 90.608(2), a party may attack the credibility of a witness by showing that the witness is biased. "Matters that demonstrate bias include prejudice, an interest in the

outcome of a case, and any motivation for a witness to testify untruthfully." *Williams v. State*, 912 So. 2d 66, 68 (Fla. 4th DCA 2005). However, the defense's right to present such evidence has limits. "Evidence of bias may be inadmissible if it unfairly prejudices the trier of fact against the witness or misleads the trier of fact." *Breedlove v. State*, 580 So. 2d 605, 609 (Fla. 1991).

In *Breedlove*, the Florida Supreme Court provided that a witness can be impeached by, among other things, showing that the witness is biased or by proving that the witness has been convicted of a crime. *See* Fla. Stats. §§ 90.608(1)(b), 90.610(1) (1989). While defense witnesses may be impeached only by proof of convictions, the rule regarding prosecution witnesses has been expanded. Thus, if a state witness is presently or was recently under actual or threatened criminal charges, a defendant against whom such witness testifies has an absolute right to bring those circumstances out on cross-examination. *See Fulton v. State*, 335 So. 2d 280, 283-84 (Fla. 1976).

This reasoning has been generally accepted when a state witness has been charged with a crime. If a state witness is merely under investigation, however, the ability to cross-examine on such investigation is not absolute. Instead, any criminal investigation must not be too remote in time and must be related to the case at hand to be relevant. *See Breedlove*, 580 So. 2d at 607-08.

Here, defense counsel could not identify any specific charges against or police investigations into Conde. There was no basis for the proposed cross-examination as there was nothing to suggest that Conde was motivated to testify favorably on behalf of the prosecution as the state proffered that Officer Segovia told the witness he could not help him and the prosecutor had no idea that Conde had contacted the detective. Moreover, there is nothing in the record to suggest that Conde had any charges or investigations that were pending (or even recently resolved) at the time of his testimony and/or that he was trying to curry favor with the state attorney's office. Therefore, the trial court appropriately sustained the state's objection.

Petitioner also takes issue with the state court's limiting defense counsel's cross-examination regarding Conde's prior convictions. On cross-examination, defense counsel asked whether Conde had been convicted in the past. [T. 866]. Conde answered that he had been convicted four times. [*Id.*]. The defense then asked:

> **Defense counsel**: And you became a four-time convicted felon because you pled guilty, correct?
>
> **Prosecutor**: Judge, objection, this is improper impeachment.
>
> **The Court**: Sustained. Next question.
>
> **Defense counsel**: Mr. Conde, isn't it true in deposition you told me that your felonies had been dismissed?
>
> **Prosecutor**: Objection. Judge, can we come side bar?
>
> **The Court**: The jury instruction allows a jury to consider the fact that a witness has been convicted of something for them to determine the credibility of the witness. Now that the evidence in front of the jury is that he's been convicted it is irrelevant that he tried to obscure it in deposition. That's why the objection is sustained.
>
> **Defense counsel**: Judge, but the other part of the jury instruction is, did the witness make a statement that is different from what his testimony was at trial. I'm trying to bring the impeachment through that. He lied to me in deposition, the jury can infer or give whatever weight they want to his testimony, but the fact still remains that on that issue he said it was dismissed when, in fact, he'd been convicted not just once but four times.
>
> **The Court**: But now that they know he's been convicted, which is the material issue, what he told you in deposition is not material and the objection is sustained noting your objection.

[T. 867]. Conde also confirmed that he had been convicted of crimes involving dishonesty twice. [T. 868].

Petitioner argues that the trial court improperly limited his cross-examination of Conde where he wanted to ask him if at the deposition, Conde falsely stated that his convictions had been dismissed. Petitioner argues that this cross-examination was not being used to discredit Conde on

the basis of prior convictions, rather, as a prior inconsistent statement.

Prior inconsistent statements are not hearsay and can be admitted as substantive evidence "if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . [i]nconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Fla. Stat. § 90.801(2)(a). A prior statement must either directly contradict or be materially different from the expected testimony at trial. *See Pearce v. State*, 880 So. 2d 561 (Fla. 2004). More importantly, the inconsistency must involve a material, significant fact rather than mere details. *See* Charles W. Ehrhardt, *Florida Evidence* § 608.4 (2010 ed.).

Here, the alleged prior inconsistent statement went to the witness's prior convictions. At trial the witness testified accurately that he had four prior convictions, and two convictions for cases involving dishonesty. Nevertheless, defense counsel wanted to impeach him with his deposition testimony, where he allegedly stated that the cases against him had been dismissed. The court denied this line of questioning because the witness had accurately testified at the trial about his convictions. The state trial court correctly concluded that the convictions were the material issue, not Conde's testimony regarding the convictions at a pre-trial deposition. As a result, any inconsistency did not involve a material fact. Thus, the trial court did not err in limiting defense counsel from asking further questions.

Furthermore, even assuming the trial court erred as alleged by Petitioner under claims 1, 6, and 7, errors of state evidentiary law are not a basis for federal habeas relief unless they result in constitutional error. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014).

Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted). Petitioner has failed to overcome this burden. The state introduced ample evidence, to which Petitioner does not object, to support the convictions.

The trial court's rejection of these claims, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 2**, Petitioner asserts that the state trial court denied his right to a fair trial when it denied his self-defense jury instruction. [ECF No. 1 at 7-8].

The Eleventh Circuit has held, "A jury instruction that 'was allegedly incorrect under state law is not a basis for habeas relief.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67 (1991)). Unlike a state appellate court, a federal court conducting habeas review need only determine whether the challenged jury instruction, or failure to give a requested jury instruction, "viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" *Id.* (quoting *Estelle*, 502 U.S. at 72); *see also Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law.").

Under Florida law, a claim of self-defense requires that a person "reasonably believes that such conduct is necessary to defend himself or herself or another person against such other's imminent use of unlawful force." Fla. Stat. § 776.012. "The defendant has the burden of presenting sufficient evidence that he acted in self-defense in order to be entitled to a jury instruction on the issue." *Mosansky v. State*, 33 So. 3d 756, 758 (Fla. 1st DCA 2010).

15

Here, the Petitioner failed to introduce any evidence for a self-defense instruction. During its closing arguments, the defense never argued self-defense. Instead, the defense was mistaken identity and/or that the state failed to meet its burden of proof. However, based on the defense presented during the trial, reading an instruction on self-defense was not warranted. "In a criminal proceeding the discretion  of the trial court in this regard is rather narrow, however, because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support this theory, and so long as the theory is recognized as valid under the law of the state." *Worley v. State*, 848 So. 2d 491, 491-92 (Fla. 5th DCA 2003) (internal citations omitted). Indeed, "[a] criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is any evidence to support it, no matter how weak or flimsy." *Gregory v. State*, 937 So. 2d 180, 182 (Fla. 4th DCA 2006).

Self-defense is an affirmative defense requiring an admission that the defendant was responsible for the shooting but was justified in doing so. Conversely, Petitioner's defense was that he did not shoot the victim, someone else shot the victim, and that the state failed to meet its burden of proof. Defense counsel put forth a theory that the other person was justified in shooting the victim. However, this issue was not before the jury. Rather, the issue before the jury was whether Petitioner shot the victim. A criminal defendant has the right to a jury instruction on a proposed theory of defense, provided it is a legally cognizable defense and there is some evidence at trial to support the instruction. *See United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011). The defense did not present any evidence or argument in support of self-defense. As a result, the trial court did not err in refusing to instruct the jury on self-defense.

The trial court's rejection of this claim, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

In **Claim 3**, Petitioner asserts that defense counsel was ineffective in failing to object to the prosecutor's improper comments during closing on Petitioner's post-arrest silence. [ECF No. 1 at 8-10]. Similarly, in **Claim 4**, Petitioner asserts that Defense counsel was ineffective in failing to object to the prosecutor's improper and inflammatory comments during closing argument. [ECF No. 1 at 10-11].

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *see also Hall v. Wainwright*, 733 F.2d 766, 733 (11th Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the court must consider the totality of the circumstances in the context of the entire trial. *See Davis v. Zant*, 36 F.3d 1538, 1551 (11th Cir. 1983). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1988).

The purpose of closing argument is to explain to the jury what it has to decide and what evidence is relevant to its decision. *See United States v. Iglesias*, 915 F.2d 1524, 1529 (11th Cir. 1990). The jury's decision is to be based upon the evidence presented at trial and the legal instructions given by the court. *See Chandler v. Florida*, 449 U.S. 560, 574 (1981) ("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."); *see also Ward v. State*, 765 So. 2d 299, 300 (Fla. 5th DCA 2000) ("most of the prosecutor's comments were 'fair comment' on the defense

counsel's closing argument"); *Laboo v. State*, 715 So. 2d 1034, 1035 (Fla. 1st DCA 1998) (prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

Petitioner takes issue with the prosecutor's argument during closing that Petitioner did not tell the police the homicide was in self-defense and instead,

> He didn't say any of those things. That's your chance, buddy. If it's really self-defense what is any honest law-abiding citizen going to tell the police, the guy tried to kill me I had to shoot him. You don't say some story about, well, I didn't know anything about a homicide.

[T. 1033-1034]. The prosecutor also noted that Petitioner was "never sticking with the same story. He changes the story, which each and everyone of you should consider." [T. 1033].

The prosecutor's comments highlighted the inconsistency in Petitioner's statements to the police. *See Whigham v. State*, 97 So. 3d 274 (Fla. 1st DCA 2012) (prosecutor did not improperly comment on defendant's right to remain silent by stating during closing argument that defendant had blamed a third party for the aggravated battery; the prosecutor highlighted for the jury the inconsistency between what defendant told police upon being arrested and the defense he presented at trial that the shooting occurred in self-defense).

Petitioner next takes issue with the prosecutor's comment during closing that, "I am always struck and amazed by the inhumanity, the callousness, the evil act, the pure meanness that one human being can display to another." [T. 1018]. The prosecutor did not directly say that the Petitioner was inhumane or callous. Instead, the prosecutor commented on the act of shooting the victim sixteen times and the impact this had on the victim's internal organs. The comments did not unfairly inflame the minds and passions of the jury. They were based upon Dr. Lew's testimony regarding what the bullets did to the victim. *See* [T. 562-600].

Even assuming defense counsel's failure to object to the above comments constituted deficient performance because the comments were improper, Petitioner cannot establish prejudice in light of the overwhelming evidence against him. Jorge Conde testified that the victim had some money in his hand when Petitioner began shooting him. Conde never saw a gun in the victim's hand when Petitioner shot him and did not see a gun after the victim fell on the ground. [T. 823]. Ms. Kaifos testified to seeing Petitioner with a gun in his possession the day of the murder. [T. 646]. Dr. Lew testified to the sixteen gunshots to the victim's body. [T. 562-600]. Considering the totality of the circumstances in the context of the entire trial, Petitioner cannot establish that the fundamental fairness of the trial was compromised by the prosecutor's comments. *See Zant*, 36 F.3d at 1551.

The trial court's rejection of these claims, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 5**, Petitioner asserts that defense counsel was ineffective in failing to advise Petitioner that the court would not give a self-defense jury instruction unless Petitioner testified. [ECF No. 1 at 11-13]. The trial court conducted an evidentiary hearing on this claim. *See* [ECF No. 19-3]. Petitioner's trial attorney, Milena Abreau, testified that she advised Petitioner of the need for him to testify in support of a self-defense claim. [*Id.* at 94-99].

The trial court then entered an order denying the claim as follows:

> This court finds the defendant's testimony so incredible, this motion on this claim can be denied on the face of it alone. However, further supporting this court's denial of relief is the testimony of his trial counsel, who testified in a sensible manner, clearly and concisely, that once witness Conde was found, she urged the defendant to put forth a self-defense defense, but that he steadfastly refused. She was clear that she told him he needed to testify in order to put on self-defense, but that he refused. Based on the totality of the evidence and testimony presented, the court finds the defendant is not entitled to relief on claim one.

[*Id.* at 115].

Here, the trial court accepted defense counsel's testimony at the evidentiary hearing. Consistent with Florida and Federal law, the trial court decided that this evidence was insufficient to warrant a motion for mistrial. "Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1249 (11th Cir. 2013) (quoting *Jones v. Walker*, 540 F.3d 1277, 1288 n. 5 (11th Cir. 2008)); *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). There is no clear and convincing evidence in the record which rebuts the state trial court's conclusion.

The trial court's rejection of this claim, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 8**, Petitioner asserts that appellate counsel was ineffective for failing to challenge the trial court's ruling limiting important testimony. [ECF No. 26 at 4].

Defense counsel filed a November 30, 2011 motion to exclude state witnesses, namely, Bibi Wahab and Jorge Conde, due to the failure of these witnesses to appear for a deposition. [ECF No. 23-1]. The state concedes that the trial court granted the motion. [ECF No. 35 at 15]. Petitioner appears to argue that the trial court improperly allowed Conde and Wahab to testify at trial, notwithstanding the court's prior ruling. [ECF No. 23].

Petitioner's argument is refuted by the record. As a preliminary matter, Wahab did not testify at trial. *See generally* [ECF No. 20, Trial Transcripts]. Conde did testify at trial, however, he sat for a deposition after the court granted Petitioner's November 30, 2011 motion but before trial. Petitioner testified under oath at the Rule 3.850 evidentiary hearing that Conde ultimately sat

for a pre-trial deposition. [ECF No. 19-3 at 14]. As a result, Petitioner had no basis to object to Conde's trial testimony.

As stated before, to establish ineffective assistance of appellate counsel, the petitioner must show "(1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere*, 537 F.3d at 1310 (citations omitted). Petitioner cannot establish that he would have prevailed on appeal where the reason the trial court granted the motion to exclude Conde, because he had not sat for a deposition, no longer existed at the time he testified at trial. Appellate counsel is not ineffective in failing to raise this meritless argument on direct appeal. *See id.*

The trial court's rejection of this claim, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

## VI. Cautionary Instruction Regarding the *Clisby* Rule

Finally, this Court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013) (citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively, warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VII.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on a petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016).

The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not required.

## VIII.  Certificate of Appealability

A petitioner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court should deny a COA. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections to this Report.

## IX. Conclusion

Based upon the above, it is recommended that:

1.      the federal habeas Petition be DENIED;

2.      a certificate of appealability be DENIED; and,

3.      the case CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the District Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1).

SIGNED this 3rd day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   **Kenny Davis**
      M44833
      Northwest Florida Reception Center-Annex
      Inmate Mail/Parcels
      4455 Sam Mitchell Drive
      Chipley, FL 32428
      PRO SE

      **Robert Lawrence Sirianni , Jr.**
      Brownstone, P.A.
      400 North New York Avenue
      Suite 215
      Winter Park, FL 32789
      407-388-1900
      Fax: 407-622-1511